UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MOHAWK GAMING
ENTERPRISES, LLC,

                        Plaintiff,

            -v-                          8:20-CV-701

AFFILIATED FM INSURANCE CO.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

THE COPPOLA FIRM                  LISA A. COPPOLA, ESQ.
Attorneys for Plaintiff
3960 Harlem Road, Suite 7
Buffalo, NY 14226

MARSHA K. SCHMIDT,                MARSHA K. SCHMIDT, ESQ.
   ATTORNEY AT LAW
Attorneys for Plaintiff
14928 Perrywood Drive
Burtonsville, MD 20866

FINAZZO COSSOLINI O'LEARY         ROBERT B. MEOLA, ESQ.
   MEOLA & HAGER, LLC             EDWARD TERRENCE
Attorneys for Defendant              HAGAN, ESQ.
67 East Park Place, Suite 901     PIEL LORA, ESQ.
Morristown, NJ 07960              ROBERT FRANCIS
                                     COSSOLINI, ESQ.


DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

This is a contract dispute between plaintiff Mohawk Gaming Enterprises, LLC ("Mohawk Gaming" or "plaintiff") and defendant Affiliated FM Insurance Company ("Affiliated FM" or "defendant") over coverage for loss caused by a business interruption at the Akwesasne Mohawk Casino Resort (the "Casino").

In early March of 2020, the Saint Regis Mohawk Tribe (the "Tribe") closed the Casino to the public following news of a COVID-19 exposure incident at St. Lawrence College (the "College"), which is located just a few miles away across the Canadian border in Kingston, Ontario.

Thereafter, Mohawk Gaming sought coverage for the business interruption from Affiliated FM under the terms of an insurance contract in effect at the time of the closure order. However, as the policy's deadline for the investigation and settlement of the claim neared, plaintiff came to believe that defendant planned to deny coverage, in bad faith and otherwise.

On June 23, 2021, Mohawk Gaming filed this four-count complaint alleging claims for declaratory judgment (Count One), breach of contract (Count Two), a violation of New York General Business Law § 349 (Count Three), and fraud (Count Four). Dkt. No. 1. Affiliated FM answered and asserted a panoply of affirmative defenses. Dkt. No. 11.

- 2 -

On September 22, 2020, at an initial conference with U.S. Magistrate Judge Daniel J. Stewart, the parties agreed to conduct some preliminary motion practice on certain antecedent issues that might narrow the scope of (or perhaps even obviate the need for) discovery.  *See* Dkt. No. 15.

On November 6, 2020, Mohawk Gaming moved under Federal Rule of Civil Procedure ("Rule") 56 for partial summary judgment on the question of whether a "contamination exclusion" in the insurance policy barred coverage for the business income lost at the Casino.  Dkt. No. 18.

On December 17, 2020, Affiliated FM opposed and cross-moved under Rule 12(c) for a judgment on the pleadings based on its contention that, *inter alia*, the Tribe's closure order did not trigger coverage under the "civil authority provision" of the policy.  Dkt. No. 19.  Defendant also moved to strike an attorney affidavit filed by Mohawk Gaming in connection with the motion for partial summary judgment.  Dkt. No. 21.  These motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>[1]

Mohawk Gaming is a limited liability company formed under the laws of the Tribe.  Compl. ¶ 21.  It owns the Casino, which is located on the Tribe's

---

[1] The following facts are taken from the complaint and its attached exhibits, Dkt. No. 1, and are assumed true for the purpose of resolving defendant's motion for a judgment on the pleadings.

reservation land in Franklin County, New York.  *Id.*  Affiliated FM is an insurance company incorporated in Rhode Island and headquartered in California.  *Id.* ¶ 22.  It is registered to sell insurance in New York.  *Id.*

On June 14, 2019, Affiliated FM issued to Mohawk Gaming insurance policy number SS722 (the "Policy").  Ex. 1 to Compl. at P0003.[2]  Subject to various exclusions, the Policy covered the Casino and certain other Tribe-owned properties against "all risks of physical loss or damage" during the coverage period, which ran from July 1, 2019 through July 1, 2020.  *Id.* at P0004, P0014–18.  As relevant here, the Policy includes coverage for loss due to property damage and business interruption.  Compl. ¶ 2; *see also* Policy at P0014–18, P0032–44.

On March 15, 2020, the College announced that it would be closing its campus because an unidentified student had tested positive for the novel coronavirus.  Compl. ¶ 40.  Although the College is located across the Canadian border in Kingston, Ontario, it is just 4.5 miles away from the Tribe's Casino in Hogansburg, New York.  *Id.*

On March 16, 2020, in response to growing concern about the threat of the novel coronavirus, the Tribe declared a state of emergency.  Compl. ¶¶ 43, 47.

---

[2]  As filed, the Policy bears three distinct forms of pagination.  The "P" following by a set of leading zeroes is the only fully consecutive form of pagination.  References in this opinion will be to the Bates numbering for clarity's sake.

Later that day, members of the Tribal Council met with Mohawk Gaming representatives "to discuss the need to close the casino." *Id*. ¶ 46. Although Casino management hoped to continue operating with safety measures in place, concerns about the exposure at the nearby College eventually won out. *Id*. The Tribe issued a written order closing the Casino effective at 2:00 a.m. on March 17, 2020. *Id*. ¶ 47.

On March 19, 2020, Mohawk Gaming notified Affiliated FM in writing that it intended to make an insurance claim for business interruption coverage based on the Tribe's closure order. Compl. ¶ 57. As plaintiff explained, "it intended to claim coverage under the business interruption civil authority section of the policy." *Id*. ¶ 7. However, according to plaintiff, defendant "inexplicably acknowledged the claim as one for 'communicable disease' coverage." *Id*. ¶ 8.

On May 12, 2020, after some back and forth with a claims adjuster, Mohawk Gaming submitted to Affiliated FM a "Sworn Statement in Proof of Loss." Compl. ¶¶ 58–64. According to plaintiff's submission, the Tribe's closure order triggered coverage under the Policy's civil authority provision. *Id*. ¶ 64. As the thirty-day deadline for investigating and settling the claim neared without a suitable response from defendant, plaintiff filed this lawsuit in anticipation of a denial of coverage. *See id*. ¶ 67.

## III.  <u>LEGAL STANDARDS</u>

### A.  <u>Judgment on the Pleadings</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  The standard for granting a Rule 12(c) motion is identical to that of a 12(b)(6) motion to dismiss.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

"To survive a Rule 12(b)(6) motion to dismiss, the factual allegations must be enough to raise a right to relief above the speculative level."  *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (cleaned up).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  *Id.*

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  *United States v. Bedi*, 318 F. Supp. 3d 561, 564–65 (citation omitted).

"In making this determination, a court generally confines itself to the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Bedi*, 318 F. Supp. 3d at 564–65 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

**B.  <u>Summary Judgment</u>**

The entry of summary judgment is warranted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue of fact is

material for purposes of this inquiry if it "might affect the outcome of the suit

under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  And a dispute of material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In assessing whether there are any genuine disputes of material fact,

"a court must resolve any ambiguities and draw all inferences from the facts

in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F.

Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is

inappropriate where a "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of

Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

**IV.  <u>DISCUSSION</u>**

Mohawk Gaming "seeks a declaration that it is legally entitled to

insurance coverage under the 'Business Interruption—Civil Authority"

section of its all-risk property insurance policy."  Compl. ¶ 1.  This so-called

"Civil Authority" provision is located in Section E of the Policy, which is

entitled "Business Interruption Coverage Extensions."  Policy at P0037.

Under Section E.2's Civil Authority provision, the Policy extends coverage for business interruption loss "if an order of civil or military authority prohibits access to a location provided such order is the direct result of physical damage of the type insured at a location or within five (5) statute miles of it."  Policy at P0037.  According to Mohawk Gaming, this Civil Authority provision "does not include any exclusions or exceptions to the type of 'physical damage' that may be claimed so long as it is of the type insured."  Compl. ¶ 30.

Affiliated FM responds that the Civil Authority provision does not apply because Mohawk Gaming has not plausibly alleged the requisite "physical loss or damage" necessary to trigger coverage.  Def.'s Mem., Dkt. No. 19-1 at 15–16.[3]  Defendant also identifies two Policy exclusions that, in its telling, independently bar coverage for the claim: the Contamination Exclusion and the Loss of Use Exclusion.[4]  *Id*. at 13–15.

This Contamination Exclusion excludes "[c]ontamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy."  Policy at P0018.  The Policy defines "contamination" as:

---

[3]  Pagination corresponds to CM/ECF.

[4]  The Policy's Loss of Use Exclusion applies to "[l]oss of market or loss of use."  Policy at P0017.

> any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

Policy at P0055.

Notably, Affiliated FM goes on to acknowledge that the Policy does include some manner of coverage for "Property Damage" and "Business Interruption" that is caused by "Communicable Disease." Policy at P0020, 38. The Communicable Disease provision in these sections of the Policy cover, *inter alia*, loss from business interruption as well as the "the reasonable and necessary costs" incurred to cleanup, remove, and dispose of the "presence of communicable disease from insured property" if

> a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by:
>
> a) An order of an authorized governmental agency regulating such presence of communicable disease; or
>
> b) A decision of an Officer of the Insured as a result of such presence of communicable disease[.]

Policy at P0020, P0038. "Communicable disease" is defined as disease that is "[t]ransmissible from human to human by direct or indirect contact with an affect individual or the individual's discharges." *Id*. at P0055. According to

Affiliated FM, the Communicable Disease coverage is a limited exception to

the broader Contamination Exclusion.  Def.'s Mem. at 14–15.

## A. **Breach of Contract**[5]

"Insurance policies are, in essence, creatures of contract, and, accordingly,

subject to principles of contract interpretation." *In re Estates of Covert*, 735

N.E.2d 879, 884 (N.Y. 2001).  "Under New York law, a written contract is to

be interpreted so as to give effect to the intention of the parties as expressed

in the unequivocal language they have employed." *Axis Ins. Co.*, 198 F. Supp.

3d at 11 (quoting *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435

(S.D.N.Y. 2009)).  "Thus, the Court's analysis properly starts with the four

corners of the Policy to determine if there is any ambiguity." *Id.*

"When the provisions are unambiguous and understandable, courts are to

enforce them as written." *Parks Real Estate Purchasing Grp. v. St. Paul Fire*

*& Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006); *Vill. of Sylvan Beach v.*

*Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) ("[A] written agreement

that is complete, clear, and unambiguous on its face must be enforced

according to the plain meaning of its terms.").  "Policy terms are

unambiguous where they provide definite and precise meaning, unattended

---

[5] The parties are here on diversity jurisdiction, 28 U.S.C. §§ 1332(a)(1), (c)(1), and have applied New York law to their dispute.  The Court agrees that New York is the "center of gravity" for this contract.  *See, e.g.*, *Axis Ins. Co. v. Stewart*, 198 F. Supp. 3d 4, 10–11 (N.D.N.Y. 2016) (summarizing choice-of-law rules in a diversity case involving breach of contract).

by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Axis Ins. Co.*, 198 F. Supp. 3d at 11 (cleaned up).

"Where, on the other hand, contract terms are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business, the contract terms are ambiguous." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 170 F. supp. 3d 634, 642 (S.D.N.Y. 2016) (cleaned up); *see also Universal Am. Corp. v. Nat'l Union Fire Ins. Co.*, 37 N.E.3d 78, 80 (N.Y. 2015) ("Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation.").

Upon review of the relevant Policy language, Affiliated FM's motion for a judgment on the pleadings must be granted. "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Satispie, LLC v. Travelers Prop. Cas. Co.*, 448 F. Supp. 3d 287, 293 (W.D.N.Y. 2020) (citation omitted). "This is true even for 'all-risk' policies—labeling the policy as 'all-risk' does not relieve the

insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Id.*

Mohawk Gaming's claim for coverage under the Policy is grounded in the Civil Authority provision. *See, e.g.*, Compl. ¶¶ 1, 7. Thus, the initial burden is on plaintiff to allege facts that would plausibly establish that the business interruption it suffered is "the direct result of physical damage of the type insured," either at the Casino or perhaps at the nearby College, which is within the five-mile radius contemplated by the Policy. P0037.

To that end, Mohawk Gaming alleged that the Tribe issued the closure order to prevent the spread of the novel coronavirus after it was detected at the nearby College in Kingston, Ontario. Compl. ¶¶ 46–47. However, as other courts have explained, the inclusion of the modifier "physical" in a phrase such as "direct result of physical damage" clearly imposes a requirement that the damage actually be tangible in nature; *i.e.*, this language unambiguously requires some form of physical harm to the location (or to a location within five miles). *See, e.g.*, *Michael Cetta, Inc. v. Admiral Indem. Co.*, –F. Supp. 3d–, 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) ("Losing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'").

Indeed, numerous courts around the country—including those that have applied New York law—have routinely held that the mere presence or spread of the novel coronavirus is insufficient to trigger coverage when the policy's language requires physical loss or physical damage.  *See, e.g.*, *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 1034259, at \*5–\*6 (S.D.N.Y. Mar. 18, 2021) (Report & Recommendation) (collecting cases applying New York law); *Uncork and Create LLC v. Cincinnati Ins. Co.*, –F. Supp. 3d–, 2020 WL 6436948, at \*5 (S.D. W. Va. Nov. 2, 2020) ("COVID-19 does not threaten the inanimate structures . . . . [t]hus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property.").

To avoid dismissal on this basis, Mohawk Gaming argues that coverage is triggered because the presence of the novel coronavirus qualifies as "physical damage" for the purpose of the Communicable Disease provisions.  Pl.'s Opp'n, Dkt. No. 23 at 9–15.  Plaintiff also invites the Court to consider extrinsic evidence, including some of Affiliated FM's prior regulatory filings.  *Id.* at 15–17.

These arguments must also be rejected.  As an initial matter, Mohawk Gaming cannot rely on extrinsic evidence to create an ambiguity in what is otherwise a clear, unambiguous contract.  *See, e.g.*, *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 374 (S.D.N.Y. 2019) (collecting

cases).  The plain language of the Communicable Disease provisions require the "actual not suspected presence of communicable disease" at a "described location."  Policy at P0020, 38.  A "described location" is defined in the Definitions section as "the locations described in the Insurance Provided clause of the Declarations section of this Policy."  *Id.* at P0055.  In turn, the "Insurance Provided" section lists the Casino and two other locations in Hogansburg.  *Id.* at P0004.

But Mohawk Gaming has only alleged "actual not suspected" exposure at the College, not at the Casino or at another "described location" listed as insured under the Policy.  *See, e.g.*, Compl. ¶ 47.  Even assuming otherwise, the presence of the novel coronavirus at the Casino would still not qualify as "physical damage."  *See* Pl.'s Opp'n at 9–12 (arguing same).

As explained *supra*, "the great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss."  *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021); *see also Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) (Report & Recommendation) (collecting cases for the proposition that the

need to disinfect or clean an item or structure does not qualify as physical damage or loss).

In short, Mohawk Gaming has failed to plausibly allege an entitlement to coverage under the provisions of the Policy identified in the complaint.  And it has failed to establish that the contested contractual provisions are sufficiently "ambiguous" as to require further proceedings.  *Cf. Thor Equities, LLC v. Factory Mut. Ins. Co.*, 2021 WL 1226983, at *5 (S.D.N.Y. Mar. 31, 2021) (denying motion for judgment on the pleadings based on ambiguity).  Accordingly, plaintiff's breach of contract claims (Counts One and Two) will be dismissed.[6]

## B.  General Business Law § 349

New York law makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"  N.Y. GEN. BUS. LAW § 349(a).  To state a claim under § 349, a plaintiff must show that (1) the defendants' conduct is consumer-oriented; (2) the act or practice was misleading in a material way; and (3) that the plaintiff suffered an injury as a result.  *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).

---

[6] Plaintiff's fraud claim invokes the covenant of good faith and fair dealing, Compl. ¶ 110, which is implicit in all contracts under New York law, *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). Because plaintiff has failed to plausibly allege an entitlement to coverage, plaintiff has also failed to plausibly allege that defendant breached this implied duty in connection with the decision to deny coverage.  Accordingly, this claim will also be dismissed.

"The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson*, 625 F.3d at 64 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532–33 (N.Y. 1995)). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* (cleaned up). "Accordingly, New York courts have recognized that private contract disputes between the parties do not fall within the ambit of the statue." *Id.*

Upon review, this claim will be dismissed. Mohawk Gaming makes a series of conclusory allegations about Affiliated FM's broader approach to coverage decisions *vis-a-vis* the COVID-19 pandemic in an effort to portray defendant's denial of coverage to plaintiff as something that affects the consumer market for business interruption insurance more generally. *See* Compl. ¶¶ 97–108.

However, the facts alleged establish that this litigation involves a dispute over a private insurance contract between two sophisticated parties who reached an arms' length agreement. In short, there is no plausible allegation that Affiliated FM's alleged conduct involved "injury or potential injury to the public." *Wilson*, 625 F.3d at 65; *see also Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) ("Because this case

- 16 -

consists of a private contract dispute and the contract at issue is not consumer oriented, Plaintiff has failed to state a claim under GBL § 349.").  Accordingly, this claim will also be dismissed.

## IV.  **CONCLUSION**

Because Affiliated FM's cross-motion for judgment on the pleadings will be granted, Mohawk Gaming's motion for partial summary judgment will be denied.  The motion to strike will be denied as moot.

Therefore, it is

ORDERED that

1.  Defendant Affiliated FM Insurance Company's cross-motion for judgment on the pleadings is GRANTED;

2.  Plaintiff Mohawk Gaming Enterprises, LLC's motion for partial summary judgment is DENIED; and

3.  Defendant Affiliated FM Insurance Company's motion to strike is DENIED as moot.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment dismissing the complaint, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  April 15, 2021
        Utica, New York.